UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NANCY L. SEIBERT, | : | |
| *Plaintiff* | : | |
| | : | |
| V. | : | C.A. NO.: |
| | : | |
| ODYSSEY HEALTHCARE | : | |
| OPERATING B, LP d/b/a KINDRED | : | **Jury Trial Demanded** |
| HOSPICE, alias, | : | |
| *Defendant* | : | |

## COMPLAINT

### I.   Introduction

This action is brought by the Plaintiff, Nancy L. Seibert, against her former employer, Odyssey HealthCare Operating B, LP d/b/a Kindred Hospice, alias, seeking compensatory, punitive, and liquidated damages, as well as attorneys' fees, litigation expenses and other equitable relief, arising out of Defendant's violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, the Rhode Island Parental and Family Medical Leave Act ("RIPFMLA"), R.I. Gen. Laws § 28-48-1, *et seq.*, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Rhode Island Fair Employment Practices Act ("FEPA"), R.I. Gen. Laws § 28-5-1, *et seq.*, the Rhode Island Civil Rights of People with Disabilities Act ("CRPD"), R.I. Gen. Laws § 42-87-1 *et seq.*, and the Rhode Island Civil Rights Act of 1990 ("RICRA"), R.I. Gen. Laws § 42-112-1 *et seq.*

### II.   Parties

1.      Plaintiff Nancy L. Seibert ("Plaintiff") is a resident of the Town of Narragansett, County of Washington, and State of Rhode Island.

2.      Defendant Odyssey HealthCare Operating B, LP d/b/a Kindred Hospice, alias, s ("Defendant" or "Kindred") is a foreign limited partnership duly organized under the laws of the State of Delaware, with a principal office located at 717 North Harwood Street, TX 75201 and is

doing business in the State of Rhode Island with an office located at 2374 Post Road, Suite 206, RI 02886.

### III. Jurisdiction

3. The United States District Court for the District of Rhode Island has federal subject matter jurisdiction over this case under the provisions of 28 U.S.C. § 1331 because Plaintiff asserts claims arising under federal law; specifically, the ADEA, FMLA and ADA.

4. Supplemental jurisdiction over the state law claims set forth herein is predicated on 28 U.S.C. § 1367 as they arise out of the same case or controversy.

### IV. Venue

5. Venue is proper in this Court insofar as Defendant is doing business in Rhode Island and therefore is deemed to reside in the District of Rhode Island and a substantial part of the acts and/or omissions giving rise to the claims asserted herein occurred in the District of Rhode Island, in compliance with the requirements set forth in 28 U.S.C. § 1391.

### V. Exhaustion of Administrative Remedies

6. On or about November 16, 2020, Plaintiff co-filed a charge with the Rhode Island Commission for Human Rights ("RICHR") and the United States Equal Employment Opportunity Commission ("EEOC") against Defendant, alleging discrimination on the basis of her age and disability.

7. Thereafter, more than one hundred and twenty (120) days but not more than two (2) years having elapsed since the filing of Plaintiff's charge of discrimination, and after receiving a finding of probable cause on Plaintiff's disability claims, Plaintiff filed a Request for Notice of Right to Sue with the RICHR and the EEOC.

8. On January 11, 2022, the RICHR issued Plaintiff a Notice of Right to Sue.

9. On March 9, 2022, the EEOC issued Plaintiff a Notice of Right to Sue.

10. Accordingly, insofar as Plaintiff has satisfied all administrative and/or jurisdictional requirements prior to filing a lawsuit, Plaintiff has timely instituted suit in the within matter.

11. There is no requirement under the FMLA, RIPFMLA and/or the RICRA relative to the exhaustion of administrative remedies.

### VI.  Material Facts

*Factual Background*

12. Plaintiff was born on June 12, 1954 and was sixty-six (66) years of age at the time of her termination.

13. Plaintiff was first hired by Kindred on or about January 29, 2016 as a Spiritual Care Coordinator.

14. As a Spiritual Care Coordinator, Plaintiff earned a wage of $22.45 per hour plus benefits.

15. At the time of her termination, Plaintiff had over thirteen (13) years of experience in spiritual counseling and counseling bereaved persons, as well as over four (4) years of experience as a Spiritual Care Coordinator for Kindred.

*FMLA Leave Request*

16. On or around March 13, 2020, Kindred's only other Spiritual Care Coordinator resigned, leaving Plaintiff as Kindred's only Spiritual Care Coordinator for the State of Rhode Island.

17. Plaintiff was informed that a new Spiritual Care Coordinator would be hired sometime in April.

18. On March 18, 2020, Kindred's Warwick Hospice Medical Director, Dr. Garron Lamp warned staff in attendance on a remote conference call that there was a likelihood that there

were many more COVID-19 infections in Rhode Island than were known, saying, "Be careful."

19. A hospice Registered Nurse on the call also noted that Kindred was not supplying recommended N-95 masks for protection of employees in the field.

20. That same day, Plaintiff's direct supervisor, Candace Chenault ("Ms. Chenault"), Director of Clinical Management for Kindred Hospice Warwick, directed Plaintiff to visit a patient living in an apartment building.

21. Plaintiff explained to Ms. Chenault that she had previously been warned not to visit that patient because the apartment building was unsafe and the patient could sometimes be aggressive.

22. Plaintiff additionally explained that she could be exposed to COVID-19 and offered to call the patient instead, which Ms. Chenault accepted.

23. However, Ms. Chenault then told Plaintiff that the nursing homes were going to want her to visit in person as soon as they reopened.

24. Plaintiff began to feel stress and anxiety as a consequence of both the substantial increase in her job duties due to the resignation of Kindred's other Spiritual Care Coordinator and the risk of serious illness or death if she contracted COVID-19 during the course of her employment, particularly while working at congregate care facilities.

25. Plaintiff called Jewish Collaborative Services of Providence and had a virtual counseling session with a mental health counselor, Jeremy Thayer ("Mr. Thayer"), LICSW and Clinical Director at Jewish Collaborative Services.

26. Mr. Thayer advised Plaintiff to apply for Rhode Island Temporary Disability Insurance ("TDI") benefits, and later diagnosed her with Generalized Anxiety Disorder following subsequent visits throughout March 2020.

27. Plaintiff called out sick on March 19th and 20th and then sought a medical leave due to a serious medical condition, specifically, Generalized Anxiety Disorder through Lincoln Life Assurance Company of Boston ("Lincoln"), the self-service portal for Kindred employee benefits.

28. Eventually, on April 16, 2020, Plaintiff's medical leave request was approved for the period of March 17, 2020 through June 15, 2020.

29. On May 19, 2020, Christina Jones ("Ms. Jones") of Lincoln Leave Services notified Plaintiff that her FMLA leave of absence would end on June 15, 2020, because Plaintiff would have used all available leave entitlement, and advised her to contact her employer by June 11, 2020 "to schedule [her] return to work and discuss [her] employment status."

### *Requests for Accommodation and Termination*

30. Thereafter, on June 11, 2020, in anticipation of the expiration of her leave and in light of her foregoing disability, Plaintiff requested a reasonable accommodation under the ADA and applicable state law to permit her to return to work.

31. Kindred's Reasonable Accommodation Policy states, "the Company will make reasonable accommodations for the known physical or mental limitation of an otherwise qualified individual with a disability who is an applicant or an employee, unless undue hardship and/or a direct threat to the health and/or safety of the individual or others would result."

32. Specifically, Plaintiff submitted a detailed medical note from Mr. Thayer, dated June 11, 2020, proposing an accommodation that Plaintiff be granted "100% remote work opportunities, including video conferencing and phone calls to patients from her home; Technology and administrative support to allow for such remote opportunities to occur from her home; No physical exposure to congregate care facilities including, but not limited to, group homes, hospice facilities, long term care facilities, private homes, and nursing homes; The ability

to meet remotely with co-workers and complete paperwork in a manner that meets the standards of privacy for your industry while she is at home; A transition into the physical office space can only occur once her medical providers have deemed it safe and clinically appropriate."

33. Due to her age, Plaintiff was and is well aware that she was compromised and was expressly advised by her mental health counselor and treating physician to avoid risk of exposure to COVID-19.

34. The risk of such exposure to the virus at work exacerbated her anxiety disability, necessitating the accommodation requested.

35. On June 12, 2020, Plaintiff received an email from Jane Harris ("Ms. Harris"), Kindred's Human Resources Manager, Hospice Division, informing her that Kindred was unable to approve her request for accommodation to work remotely.

36. Specifically, Ms. Harris stated, "As our business needs require that we provide in home and facility care to our patients. … it is our expectation upon your return would be that you would be able to meet the requirements of your position.  Which would require that: face to face visits with patients be made as allowed by the patient and facilities."

37. On June 14, 2020, Plaintiff completed additional paperwork required by Lincoln Leave Management to request an accommodation to work remotely.

38. On June 15, 2020, Plaintiff received an emailed letter from Ms. Jones, dated June 13, 2020, that notified her that her FMLA leave of absence would end on June 14, 2020 and specified that Plaintiff was required to request a leave extension from her employer prior to June 14, 2020 if Plaintiff was unable to return to work, and that failure to return to work at the end of her leave could result in her employer terminating her employment for job abandonment.

39. Plaintiff then spoke to Ms. Harris, who asked if Plaintiff understood her letter dated June 12, 2020 informing Plaintiff that Kindred could not approve Plaintiff's request for an accommodation.

40. Plaintiff asked Ms. Harris if there would be a dialogue between herself and Kindred regarding her request for accommodation, and Ms. Harris replied, "There will be a dialogue, but it won't make any difference."

41. According to Kindred's Reasonable Accommodation Policy, "Employees who wish to request unpaid time away from work because of a qualifying disability should speak to Human Resources regarding a proposed accommodation."

42. Therefore, because Plaintiff's request to work remotely had been denied, on June 16, 2020, she submitted a request to both Kindred and Lincoln for a six-week extension of her FMLA medical leave, per the letter received on June 15th.

43. On June 17, 2020, Plaintiff received an emailed response from Ms. Harris stating, "The reason for my call yesterday was to speak to you about your request for an additional 6 weeks of FMLA. I am sorry to inform you, the business need of the office cannot allow us to grant your request and we will be unable to continue to hold your position and we will be making today your last day. I will be requesting our IT department to send you a box in which you will be able to return your company property. Once you are clear to return we encourage you to apply back with the company."

44. Plaintiff then received a notification from Ms. Jones at Lincoln notifying her that her FMLA leave of absence was closed as of June 15, 2020 and directing her to contact her employer to schedule her return to work and discuss her employment status, and that failure to return to work at the end of her leave could result in her employer terminating her employment for job abandonment.

45. Kindred never engaged in any dialogue with Plaintiff about her request for accommodation to work remotely.

46. In later correspondence, Kindred attempted to justify its denial of Plaintiff's accommodation request by stating "the Company maintains that essential functions of her position must be performed in person and that it is unreasonable to transfer those essential job functions to others."

47. However, Kindred's refusal to grant Plaintiff's reasonable request for accommodation was not justified because her services could be just as effective if conducted over the phone and because essentially all of Kindred's patients were at the time either in facilities that prohibited entry of non-essential personnel, and Spiritual Care Coordinators were not considered to be essential, or were compromised and as consequence were in self-isolation due to the risk of COVID-19.

48. Kindred also provided confusing and contradictory explanations for denying Plaintiff's accommodation request to extend her leave of absence, stating on the one hand that her requests were indefinite, and then acknowledging that Plaintiff requested a definite extension of six weeks.

49. In addition, while Kindred claimed "that it could not hold the position and approve additional leave," over six (6) months after Plaintiff's separation, Kindred acknowledged in its Position Paper filed with the RICHR on February 15, 2021 that it still had not filled the position.

50. Accordingly, the assertion that Plaintiff's position had not been filled as of February 15, 2021, specifically contradicts its contention that it could not hold her position available.

51. *As a consequence, as a matter of law and fact, it was not an undue hardship for Kindred to grant the Plaintiff's reasonable accommodation request of a six (6) week extension of her medical leave, <u>since Kindred left the position unfilled for over six (6) months.</u>*

### VII. <u>Violation of the ADEA</u>

52. Defendant discriminated against Plaintiff in the terms and conditions of her employment on account of her age.

53. Plaintiff was sixty-six (66) years of age at the time of her termination and clearly within the protected age class under applicable law.

54. At all relevant times, Plaintiff was one of the oldest employees in her department.

55. On information and belief, Defendant's intent to discriminate on account of Plaintiff's age is established, in part, based on the fact Plaintiff was or will be replaced or her duties were or will be assumed by one or more younger workers, thereby establishing a *prima facie* case of age discrimination.

56. On information and belief, Defendant took adverse employment action against her based on stereotyped assumptions about her age; that is, Plaintiff was an older worker who needed additional protections and accommodations against exposure to COVID-19 because of possible medical conditions associated with her age.

57. On information and belief, the younger worker(s) that replaced or will replace Plaintiff or has assumed or will assume her duties is or was paid less compensation and benefits than Defendant had been paying to Plaintiff, thereby giving rise to an inference of age discrimination.

58. Defendant's intent to discriminate on account of Plaintiff's age is further established, in part, based on the pretextual reason given for her termination discussed above.

## VIII.   Violation of the FMLA and RIPFMLA

59.   At all relevant times, Plaintiff suffered from a serious health condition as defined under the FMLA requiring continuing treatment by a health care provider; specifically, Plaintiff suffered from stress and anxiety disorders.

60.   At all relevant times, Plaintiff suffered from a serious illness as defined under the RIPFMLA requiring continuing treatment by a health care provider; specifically, stress and anxiety disorders.

61.   Defendant's termination of Plaintiff after she took a medical leave and had requested an extension and/or as soon as her FMLA/RIPFMLA medical leave ended gives rise to a *prima facie* case of unlawful interference with Plaintiff's rights under the FMLA and RIPFMLA.

62.   Defendant's termination of Plaintiff while she was on medical leave and had requested an extension and/or as soon as her FMLA/RIPFMLA medical leave ended and refusal to extend her leave pursuant to its own policy gives rise to a *prima facie* case of unlawful discrimination against Plaintiff for exercising her rights under the FMLA and RIPFMLA.

63.   Defendant's termination of Plaintiff while she was out on medical leave and had requested an extension and/or as soon as her FMLA/RIPFMLA medical leave ended and refusal to extend her medical leave pursuant to its own policy gives rise to a *prima facie* case of unlawful retaliation against Plaintiff for exercising her rights under the FMLA and RIPFMLA.

## VIII.   Disability Discrimination in Violation of the ADA, CRPD, FEPA, and RICRA

*Protected Impairment*

64.   At all relevant times, Plaintiff suffered from several disabilities as defined under the ADA, FEPA, CRPD, and RICRA, specifically, stress, and anxiety disorders, that substantially limited one or more major life activities, including her ability to concentrate.

65. The ability to concentrate and focus is an essential job function in Plaintiff's former position as a Spiritual Care Coordinator.

66. Both the EEOC and Courts have held that "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position is held . . . is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position," including providing additional unpaid leave, are reasonable accommodations under the ADA. *See, e.g.*, 29 C.F.R. § 1630.2(o)(1); *Ralph v. Lucent Technologies, Inc.*, 135 F.3d 166 (1st Cir. 1998); *Hankins v. The Gap, Inc.*, 84 F.3d 797 (6th Cir. 1996).

67. Plaintiff's serious medical condition, disability, and need for reasonable accommodation were clearly obvious and known to the Defendant given the previous documentation already submitted by Plaintiff's medical provider for Plaintiff's medical leave.

68. At all relevant times, Defendant had a record of Plaintiff's impairments, as that term is defined and applied under the ADA, FEPA, CRPD, and/or RICRA, including Plaintiff's stress and anxiety disorder.

69. Accordingly, even if Plaintiff was not suffering from a "disability," Defendant regarded and/or perceived Plaintiff as being disabled and/or had a record of her impairment.

### *Adverse Employment Action*

70. Plaintiff began experiencing adverse employment action by Defendant after she informed Defendant of her disabilities and her need for reasonable accommodation in the form of working remotely and/or medical leave and extended medical leave.

71. Defendant clearly treated Plaintiff differently from other employees not suffering or perceived as suffering from a disability, by a) refusal to accept Plaintiff's reasonable accommodation and thereby forcing Plaintiff to take an unpaid medical leave and b) terminating

Plaintiff's employment after refusing to grant an extension to her medical leave, in violation of applicable law and contrary to the customary practice and procedure of the Defendant.

### *Failure to Provide Reasonable Accommodation/Engage in an Interactive Dialogue*

72. At all relevant times, Defendant was aware that Plaintiff had a need for a reasonable accommodation due to her disabilities in the form of either allowing her to work remotely or to grant a short extension of her medical leave.

73. Defendant's failure or refusal to engage in a dialogue relative to the necessity and nature of any reasonable accommodation Plaintiff required, in and of itself, qualifies as prohibited disability discrimination.

74. Furthermore, Defendant's denial of Plaintiff's requested accommodation to work remotely because performing services in person is an essential job function and that it is unreasonable to transfer those essential job functions to others is not supported by the actual functioning of Plaintiff's position.[1]

75. Furthermore, by as early as March 6, 2020, the Centers for Medicare & Medicaid Services (CMS) broadened access to Medicare telehealth services by allowing Medicare to "pay for office, hospital, and other visits furnished via telehealth across the country and including in patient's places of residence."[2]

---

[1] 42 USC § 12111(8) provides that an employer's "written description," and an "employer's judgment" shall be **considered** in determining whether a questioned function is considered "essential." In *Hall v. United States Postal Serv*, 857 F.2d 1073 (6th Cir. 1988), the court held that the determination of whether a particular function is essential should be based on "more than statements in a job description and *should reflect the actual functioning and circumstances of the particular enterprise involved.*" *Id.* at 1079 (emphasis added). The EEOC regulations provide that, in addition to considering the two factors discussed in 42 USC § 12111(8), a court should also consider "*(iii) The amount of time spent on the job* performing the function; (iv) The consequences of not requiring the incumbent to perform the function; … (vi) The work experience of past incumbents in the job; and/or (vii) The current work experience of incumbents in similar jobs." 29 CFR 1630.2(n)(3); *Peden v. City of Detroit*, 407 Mich. 195, 207, 284 N.W.2d 463 (Mich. 2004). Notably, the EEOC Interpretive Guidance, 29 C.F.R. Part 1630, App. §1630.2(n), states that, neither the job description factor, nor the employer's judgment, is to be accorded greater weight than the other factors.

[2] Medicare Telemedicine Health Care Provider Fact Sheet, March 17, 2020, https://www.cms.gov/newsroom/fact-sheets/medicare-telemedicine-health-care-provider-fact-sheet.

76. Thus, any business-related concern that providing services remotely would not be compensated by Medicare were eliminated prior to Plaintiff's request for a leave of absence.

77. At all relevant times, Defendant refused to provide Plaintiff with the medically documented reasonable accommodation she requested, specifically, her request to work remotely and/or for an extension of her medical leave.

### *Disability Discrimination and Retaliation*

78. Pursuant to the ADA, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA.]" 42 U.S.C. § 12203(a).

79. Pursuant to the ADA, it is "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed … any right granted or protected by [the ADA]." 42 U.S.C. § 12203(b).

80. Pursuant to the FEPA, it is unlawful "[f]or any employer…to discriminate in any manner against any individual because he or she has opposed any practice forbidden by this chapter …" R.I. Gen. Laws § 28-5-7(5).

81. Pursuant to the FEPA, it is unlawful "[f]or any person, whether or not an employer, … to aid, abet, incite, compel, or coerce the doing of any act declared by [the FEPA] to be an unlawful employment practice, or to obstruct or prevent any person from complying with the provisions of [the FEPA]…, or to attempt directly or indirectly to commit any act declared by this section to be an unlawful employment practice; …" R.I. Gen. Laws § 28-5-7(6).

82. Defendant retaliated, discriminated, interfered, intimidated, and/or threatened Plaintiff as stated above by taking the adverse actions described above including: a) denying Plaintiff's request to work remotely despite that employees were not permitted to enter many

facilities at the time of Plaintiff's request; b) denying Plaintiff's request for extended medical leave as provided; and, c) terminating Plaintiff's employment as a Spiritual Care Coordinator.

83. For the same reasons set forth herein, particularly in paragraph 81, Defendant, by and through its agents, aided, abetted, incited, compelled, or coerced acts in violation of the ADA and/or FEPA.

84. For the same reasons set forth herein, particularly in paragraph 81, Defendant, by and through its agents, obstructed or prevented compliance with the provisions of the FEPA as set forth herein.

### IX. General Employment Law Allegations

*Pretext and Discriminatory Animus*

85. Defendant's intent to discriminate against Plaintiff on account of her disabilities, perceived impairments, or recorded impairments is further established, in part, by conduct evidencing that Defendant's reasons for terminating her were pretextual and that discrimination motivated its decision, including: a) failure to follow its own policies and procedures, b) inexplicable deviation from its normal practices and procedures, c) asserting after the fact justifications for her termination, d) asserting false justifications for denial of her request for accommodation; e) asserting false justifications for her termination, f) treating Plaintiff differently than other similarly situated employees; and, g) asserting implausible, inconsistent, and contradictory justifications for her termination.

86. The temporal proximity of adverse employment action against Plaintiff in relation to her requests for and commencement of her FMLA/RIPFMLA leave and reasonable accommodation supports an inference of discriminatory intent.

*Motivation and Harm*

87. Defendant's wrongful and/or unlawful acts and/or omissions, including, but

not limited to those described herein, are in violation of the ADEA, FMLA, RIPFMLA, ADA, FEPA, CRPD, and/or RICRA and were motivated by malice or ill will toward Plaintiff, and Defendant otherwise acted in bad faith and/or with reckless indifference to the statutorily protected rights of Plaintiff.

88. As a proximate result of Defendant's wrongful and/or unlawful discriminatory acts and/or omissions, including, but not limited to those described herein, Plaintiff suffered, is now suffering, and will continue to suffer emotional and economic injury, including, but not limited to, pecuniary losses, loss of income, loss of benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, damage to her professional and personal reputation, and has incurred and will continue to incur expenses for legal services, and other great harm.

## X.     Causes of Action

89. Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 88 of this Complaint in each of the counts below with the same force and effect as if set forth therein.

**COUNT ONE**
**Age Discrimination in Employment Act**
**29 U.S.C. § 621,** *et seq.***,**

90. Defendant, by its acts and/or omissions, including, but not limited to those described herein, violated Plaintiff's rights under the ADEA, and thereby deprived Plaintiff of rights secured under the ADEA, causing Plaintiff to suffer damages as aforesaid.

**COUNT TWO**
**Family and Medical Leave Act**
**29 U.S.C. § 2601,** *et seq.*
*Interference, Retaliation, and Discrimination*

91. Defendant, by its acts and/or omissions, including, but not limited to those described herein, violated Plaintiff's rights under the FMLA, and thereby deprived Plaintiff of

rights secured under the FMLA, causing Plaintiff to suffer damages as aforesaid.

## COUNT THREE
**Rhode Island Parental and Family Medical Leave Act**
**R.I. Gen. Laws § 28-48-1,** *et seq.*
*Interference, Retaliation, and Discrimination*

92. Defendant, by its acts and/or omissions, including, but not limited to those described herein, violated Plaintiff's rights under the RIPFMLA, and thereby deprived Plaintiff of rights secured under the RIPFMLA, causing Plaintiff to suffer damages as aforesaid.

## COUNT FOUR
**Americans with Disabilities Act**
**42 U.S.C. § 12101,** *et seq.*
*Discrimination, Failure to Accommodate, and Retaliation/Interference*

93. Defendant, by its acts and/or omissions, including, but not limited to those described herein, discriminated against Plaintiff on the basis of Plaintiff's disability and violated Plaintiff's statutory rights in violation of the ADA, and thereby deprived Plaintiff of rights secured under the ADA, causing Plaintiff to suffer damages as aforesaid.

## COUNT FIVE
**Rhode Island Fair Employment Practices Act**
**R.I. Gen. Laws § 28-5-1,** *et seq.*
*Discrimination, Failure to Accommodate, and Retaliation/Interference*

94. Defendant, by its acts and/or omissions, including, but not limited to those described herein, discriminated against Plaintiff on the basis of Plaintiff's disability and violated Plaintiff's statutory rights in violation of the FEPA, and thereby deprived him of rights secured under the FEPA, causing Plaintiff to suffer damages as aforesaid.

## COUNT SIX
**Civil Rights of People with Disabilities**
**R.I. Gen. Laws § 42-87-1,** *et seq.*
*Discrimination, Failure to Accommodate, and Retaliation/Interference*

95. Defendant, by its acts and/or omissions, including, but not limited to those described herein, discriminated against Plaintiff on the basis of Plaintiff's disability and violated

Plaintiff's statutory rights in violation of the CRPD, and thereby deprived Plaintiff of rights secured under the CRPD, causing Plaintiff to suffer damages as aforesaid.

### COUNT SEVEN
### Rhode Island Civil Rights Act of 1990
### R.I. Gen. Laws § 42-112-1, *et seq.*
*Discrimination, Failure to Accommodate, and Retaliation/Interference*

96. Defendant, by its acts and/or omissions, including, but not limited to those described herein, engaged in unlawful discrimination on the basis of Plaintiff's disability, and thereby wrongfully interfered with Plaintiff's contract of employment in violation of the RICRA, and thereby deprived Plaintiff of rights secured under the RICRA, causing Plaintiff to suffer damages as aforesaid.

### XI.    Prayers for Relief

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court grant the following relief:

1. A declaratory judgment declaring the acts and/or omissions of Defendant, including, but not limited to those complained of herein, to be in violation of the FMLA, RIPFMLA, ADA, FEPA, CRPD, and/or RICRA.

2. An injunction or other equitable relief directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and not repeated.

3. All available relief at law and/or in equity, including, but not limited to, an award of back pay, front pay, other compensation and/or benefits, and to make her whole for all earnings and benefits she would have received but for Defendant's unlawful conduct.

4. An award of compensatory damages.

5. An award of punitive damages.

6. An award of liquidated damages.

7. An award of prejudgment interest, reasonable attorneys' fees, and costs.

8. Such other and further relief as this Court deems just and proper.

## XII. Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all counts so triable.

## XIII. Designation of Trial Counsel

Plaintiff hereby designates Richard A. Sinapi, Esquire, as trial counsel.

                                                            Plaintiff,
By her attorneys,
**SINAPI LAW ASSOCIATES, LTD.**

**Dated: March 11, 2022**          **/s/ Richard A. Sinapi, Esq.**
                                           **/s/ Chloe A. Davis, Esq.**
                                           **Richard A. Sinapi, Esq. (#2977)**
                                           **Chloe A. Davis (#9334)**
                                           2374 Post Road, Suite 201
                                           Warwick, RI 02886
                                           Ph: (401)739-9690; FAX: (401) 739-9040
                                           Email: ras@sinapilaw.com
                                           Email: cad@sinapilaw.com